# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **PEGGY A. ADAMS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:06CV00075 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY**, | ) | |
| | ) | |
| Defendant. | ) | |

*John P. Bradwell, Shortridge and Shortridge, P.C., Abingdon, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Peggy A. Adams filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383(f) (West 2003 & Supp. 2007). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff applied for DIB and SSI on April 9, 2001 ("2001 claim"), alleging disability beginning March 22, 1996, based on back pain, high blood pressure, and a family history of breast cancer. (R. at 62-65, 69, 409-13.)[1] This claim was denied on July 18, 2001 (R. at 47-51), and upon reconsideration on January 11, 2002 (R. at 54-55). At her request, the plaintiff received a hearing before an administrative law judge ("ALJ") on April 8, 2004. (R. at 459-87.) The plaintiff, who was present and

---

[1] The plaintiff also filed claims in 1996 and 1999. The procedural history regarding these claims is described in *Adams v. Barnhart*, No. 2:03CV00140, 2005 WL 477977 (W.D.Va. Feb. 7, 2005).

-2-

Case 2:06-cv-00075-JPJ-PMS   Document 18   Filed 12/12/07   Page 2 of 13   Pageid#: 69

represented by counsel, testified at this hearing. (*Id*.) By decision dated May 27, 2004, the ALJ denied the plaintiff's 2001 claim for DIB and SSI. (R. at 10-23.)

The plaintiff filed a request for review of the ALJ's decision with the Social Security Administration's Appeals Council ("Appeals Council"), but on May 6, 2005, the Appeals Council denied the plaintiff's request for review. (R. at 5-7.) Thus, the ALJ's opinion dated May 27, 2004, constituted the final decision of the Commissioner as to the 2001 claim. The plaintiff then filed a complaint with this court on May 20, 2005, objecting to the final decision of the Commissioner.

The case was referred to the magistrate judge pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 2006). Both parties filed motions for summary judgment. As directed by the order of referral, the magistrate judge submitted a report and recommendations on January 10, 2006, recommending that this court deny both motions, vacate the decision denying benefits, and remand the case to the ALJ for further consideration to determine the severity of the plaintiff's hypertension between November 17, 2000, and May 27, 2004. (R. at 536-57.) The defendant filed objections to the report and recommendations, but by an order dated May 18, 2006, this court overruled the defendant's objections, accepted the magistrate's report and recommendations, vacated the decision, and remanded the case. (R. at 534-35.)

While the 2001 claim was pending before the Appeals Council, the plaintiff filed a new claim for SSI benefits on August 16, 2004 ("2004 claim"). This claim was denied initially on March 24, 2005, and again on reconsideration on September 6, 2005. The 2004 claim was then consolidated with the 2001 claim that was on remand from this court.[2]

At the plaintiff's request, she received another hearing before the ALJ on August 10, 2006, concerning the consolidated claims. (R. at 507-33.) The plaintiff, who was present and represented by counsel, testified at this hearing. (*Id.*) By decision dated October 17, 2006, the ALJ denied the 2001 and 2004 claims. (R. at 488-502.) Because the 2001 claim was reviewed on remand, the plaintiff had the option of filing an appeal with the Appeals Council or filing an action in this court. *See* 20 C.F.R. § 404.984 (2007). The plaintiff chose the latter and on December 18, 2006, filed the present action before this court objecting to the ALJ's decision dated October 17, 2006, the Commissioner's final decision in the consolidated case. *See id.*

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

---

[2] The jurisdictional documents relating to the 2004 claim are missing from the Administrative Record filed in this case. However, the ALJ's last decision dated October 17, 2006, lists all of the relevant dates for the 2004 claim. (R. at 492.)

-4-

II

The issue in this case is whether the ALJ properly determined that the plaintiff can perform jobs present in the national economy and is therefore not disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2007). Because the plaintiff does not contest the ALJ's evaluation of her medical records or the ALJ's assessment of her residual functional capacity, I need not discuss the plaintiff's medical impairments, her treatment history, or the medical opinions submitted in this case.

The Commissioner applies a five-step sequential evaluation process in assessing DIB and SSI claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2007). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). It is the fifth step that is at issue in this case.

In order to determine whether the plaintiff could return to her past work or perform other work existing in the national economy, steps four and five, respectively,

the ALJ first assessed the plaintiff's residual functional capacity. (R. at 498-99.) He found that the plaintiff had the residual capacity for work that involves "lifting no more than 35 pounds occasionally and 15 pounds frequently, that does not require work around dust, fumes, and other respiratory irritants and that does not require strenuous and repetitive use of the hands." (*Id.*) The ALJ then determined that based on this residual functional capacity assessment, the plaintiff could not return to her past work as a sewing machine operator because it would require strenuous and repetitive use of her hands. (R. at 500.)

Next, the ALJ considered whether the plaintiff could perform other jobs existing in significant number in the national economy. In doing so he relied on the opinion of a vocational expert ("VE") who testified at the hearing on August 10, 2006. (R. at 500, 529-32.) The ALJ asked the vocational expert to consider whether jobs existed in significant numbers for a hypothetical person the same age as the plaintiff with the same education, background, and residual functional capacity. (R. at 529-30.) The ALJ described the plaintiff's residual functional capacity as: the ability to lift no more than thirty-five pounds occasionally and fifteen pounds frequently, the inability to work in an environment that would expose her to excessive dust, fumes, and other respiratory irritants, and the inability to perform work that requires strenuous and

repetitive use of the hands. (*Id.*)³ The VE responded that this hypothetical person could perform the jobs of ticket taker, information clerk, greeter, receptionist, and interviewer. (R. at 530.) He estimated that approximately 7,000 of these jobs existed in Virginia and approximately 200,000 existed nationwide. (*Id.*)

The plaintiff's attorney then asked the VE whether the plaintiff could perform any of these jobs assuming that her various medications make her drowsy and that she takes a several-hour nap every afternoon. (R. at 532.) The VE responded, "I don't think she could perform the duties of any of these jobs with that limitation." (*Id.*) The plaintiff's attorney did not ask the VE whether his opinions conflicted with the Dictionary of Occupational Titles ("DOT"). (*Id.*) The ALJ, similarly, did not inquire about any conflicts between the VE's testimony and the DOT. (R. at 529-32.)

Thus, the issue raised on appeal is whether the ALJ erred by not specifically asking the VE during the hearing whether his testimony was consistent with the DOT. The plaintiff argues that "[t]his alone is reversible error . . . . Since the ALJ failed to make the required inquiry on the record, the case must be remanded to take additional vocational testimony, if for no other reason." (Mem. Supp. Pl.'s Mot. Summ. J. 8-9.)

---

³ According to the Regulations, the plaintiff is capable of performing "light" work based on the restrictions identified by the ALJ. *See* 20 C.F.R. §§ 404.1567 (b), 416.967(b) (2007). The VE also assumed when answering this hypothetical question that the plaintiff had no transferable skills. (R. at 529.)

-7-

In support of this argument, the plaintiff relies on SSR 00-4p, a 2000 Social Security Administration policy interpretation ruling, that states in relevant part:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

In her brief, the plaintiff quoted the above passage but edited out the phrase, "When there is an apparent unresolved conflict between VE or VS evidence and the DOT . . . ." (*See* Mem. Supp. Pl.'s Mot. Summ. J. 9.) As the Commissioner argues, this phrase suggests that an ALJ is only required to identify and obtain a reasonable explanation for "apparent" unresolved conflicts. (*See* Def.'s Br. Supp. Mot. Summ. J. 3.)[4]

---

[4] The Commissioner further argues that SSR 00-4p's requirement that an ALJ provide a reasonable explanation in the hearing decision for an apparent conflict presumes that the conflict was raised prior to the issuance of the ALJ's decision. (Def.'s Br. Supp. Mot. Summ. J. 3.) In support of this argument, the Commissioner urges this court to look to decisions from the Fifth Circuit. (*Id.*) In particular, the Fifth Circuit stated, "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the

-8-

The transcript from the hearing indicates that neither the plaintiff nor the ALJ recognized an apparent conflict between the VE's testimony and the DOT. (*See* R. at 507-33.) Indeed, the plaintiff's attorney asked only one question of the VE and it did not address the DOT. (R. at 532.) According to the Commissioner, the plaintiff's failure to raise this issue at the administrative hearing is "strong evidence that no 'apparent' conflict existed at the time of the hearing" and such conflict could only possibly be found "after pouring over the [DOT] in search of a conflict to undermine the ALJ's decision." (Def.'s Br. Supp. Mot. Summ. J. 4.)

Assuming arguendo, that pursuant to SSR 00-4p, an ALJ has an affirmative duty to inquire about the consistency between a VE's testimony and the DOT, even in the

---

specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131,146-47 (5th Cir. 2000). Although *Carey* was decided before SSR 00-4p was issued, the Fifth Circuit reiterated its *Carey* holding subsequent to SSR 00-4p in a 2004 unpublished opinion, *Haas v. Barnhart,* 91 F. App'x 942 (5th Cir. 2004). The *Haas* opinion has been criticized as improperly placing the burden on the claimant to come forward during the hearing and identify conflicts, because it is the duty of the Commissioner and not the claimant to show that the claimant can perform alternative available work. *See e.g.*, *Romine v. Barnhart*, 454 F. Supp. 2d 623, 629-31 (E.D. Tex. 2006). Nevertheless, I need not resolve in this case whether a claimant must raise a conflict prior to the issuance of the ALJ's decision, because I find that the ALJ's failure to inquire into any inconsistencies was harmless.

absence of apparent unresolved conflicts, I find that the ALJ's failure to do so in this case is harmless error.

In *Rutherford v. Barnhart*, the Third Circuit faced a similar situation in that inconsistencies existed between the VE's testimony and the DOT and the ALJ failed to inquire into these inconsistencies on the record. 399 F.3d 546, 556 (3d Cir. 2005). The ALJ in *Rutherford* also failed to explain why he followed the VE's testimony rather than the DOT. *See id*. The Third Circuit indicated that the ALJ's failure to question the VE on the record about these inconsistencies, by itself, did not warrant an automatic remand. *Id*. at 556-58. Instead, the court looked to other factors to determine whether remand was appropriate and ultimately held, "[A]lthough some minor inconsistencies may exist between the vocational testimony and DOT information, we conclude that the testimony provided substantial evidence for the ALJ's conclusions." *Id*. at 558.

The alleged inconsistencies in this case between the VE's testimony and the DOT can also be considered "minor" and, thus, do not require remand.[5] The only apparent conflict that, perhaps, should have been resolved during the hearing is the

---

[5] It is important to emphasize that inconsistencies may require remand not because the ALJ is required to accept the DOT over the VE's opinion, but because SSR 00-4p states that an ALJ needs to resolve this conflict before relying on the VE evidence. *See* SSR 00-4p, 2000 WL 1898704, at *3. In fact, SSR 00-4p explicitly states that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." *Id*. at *2.

-10-

VE's testimony that the plaintiff could work as a receptionist despite this being "skilled" employment under the DOT. While the DOT identifies several types of receptionist jobs, all of which it classifies as "skilled" or "semiskilled,"[6] the VE based his testimony on the assumption that the plaintiff could not perform skilled work. (R. at 529). However, the VE also identified at least three other representative jobs that the plaintiff could perform—greeter, ticket taker, and information clerk. (R. at 530.)[7]

The plaintiff argues that these three jobs also conflict with the DOT and therefore remand is necessary. (Mem. Supp. Pl.'s Mot. Summ. J. 12-17.) The plaintiff contends that because the "greeter" job is not listed in the DOT, that there is an unresolved conflict. (*Id*. at 12-14.) However, as the Commissioner correctly argues, "[T]he job of 'greeter' cannot conflict with the DOT when it is not found there." (Def.'s Br. Supp. Mot. Summ. J. 7.) Furthermore, SSR 00-4p clearly states that "[e]vidence from VEs or VSs can include information not listed in the DOT . . . . Information about a particular job's requirements or about occupations not

---

[6] Dept. of Labor, I Dictionary of Occupational Titles 174, 207, 256 (rev. 4th ed. 1991).

[7] The VE also stated that the job of an interviewer may apply, but neither party discusses this job in their briefs. I need not address it because I find that the ALJ properly relied on the VE's testimony regarding other identified jobs—ticket taker, greeter, and information clerk—in concluding that the plaintiff could perform alternative work.

-11-

listed in the DOT may be . . . obtained . . . from a VE's or VS's experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704, at *2.

The plaintiff does not discuss any conflict regarding the ticket taker position (*see* Mem. Supp. Pl.'s Mot. Summ. J. 9-19), and concedes that she can perform two of the information clerk jobs identified as unskilled in the DOT—transportation information clerk and brokerage information clerk (*see id.* at 15). Thus, the VE's testimony, which is in large part consistent with the DOT, provided substantial evidence for the ALJ's decision that the plaintiff can perform alternate work, including the jobs of information clerk, ticket taker, or greeter. Contrary to the plaintiff's assertion, the ALJ was not required to explain in his opinion why he followed the testimony of the VE rather than the DOT because no conflict existed for most of the jobs identified.

In short, because the inconsistencies between the VE and the DOT do not exist as to all of the jobs identified by the VE, and because the inconsistency regarding the receptionist job is "not egregious enough—either in number or in substance—to bring into question the ALJ's reliance on the expert testimony as a whole," I find that remand is not necessary. *See Rutherford*, 399 F.3d at 558.[8]

---

[8] I also reject the plaintiff's argument that remand is necessary because the VE did not specify how many of each type of job was available locally and nationally. (Mem. Supp.

-12-

III

For the foregoing reasons, the plaintiff's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: December 12, 2007

/s/ JAMES P. JONES
Chief United States District Judge

---

Pl.'s Mot. Summ. J. 17.) It is true that the regulations state that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" 20 C.F.R. §§ 404.1566(b), 416.966(b) (2007). The plaintiff contends that because the VE did not state how many of each job existed locally and nationally, the case must be remanded so that the ALJ can determine how many of the jobs that do not conflict with the DOT are available. (Mem. Supp. Pl.'s Mot. Summ. J. 17-18.) However, since I find that the ALJ properly relied on the VE's testimony that the plaintiff could perform the jobs of ticket taker and greeter, and some information clerk jobs, I reject the plaintiff's argument. The Fourth Circuit has stated that even 110 jobs is not an insignificant number. *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Thus, as the Commissioner correctly argues, "Out of the aggregate number of 7,000 jobs, 6,890 of them would have to be eliminated as conflicting with the DOT in order for Plaintiff's argument to defeat the substantial evidence standard of review. Such a proposition is unreasonable." (Def.'s Br. Supp. Mot. Summ. J. 10.)

-13-